## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN E. HORSEY, | ) |
| Plaintiff, | ) |
| v. | ) No. 14-cv-1568 (KBJ) |
| U.S. DEPARTMENT OF STATE, *et al.*, | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION</u>

Pro se Plaintiff John E. Horsey is an African-American man who worked as an employee of the U.S. Department of State ("the State Department" or "Defendant") for more than two decades prior to the events that prompted the instant employment discrimination lawsuit. Horsey alleges that the State Department suspended his security clearance, and then suspended his employment indefinitely without pay, after he refused to undergo a required psychological evaluation without union representation, and that the State Department took these adverse actions against him due to discriminatory and retaliatory animus. Horsey has filed a three-count complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; this Court liberally construes Horsey's pleading as asserting four claims against the State Department: (1) that it subjected him to a hostile work environment (*see* Compl. ¶¶ 57–59), (2) that it discriminated against him by repeatedly ordering him to undergo a psychological evaluation and refusing his request for the presence of a union representative during that evaluation (*see id.* ¶ 21), (3) that it retaliated against him by revoking his security

clearance (*see id.* ¶ 46), and (4) that it discriminated and retaliated against him by proposing to suspend him indefinitely without pay (*see id.* ¶¶ 31–32).

Before this Court at present is the State Department's motion to dismiss Horsey's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 11, at 1.)[1] Defendant's primary argument is that Horsey has failed to exhaust all administrative remedies with respect to his discrimination claims, and that the Court is precluded from reviewing his retaliation claims under the doctrine the Supreme Court established in *Department of Navy v. Egan*, 484 U.S. 518 (1988). (*See* Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 11–1, at 1–2.) Defendant's motion also maintains that Horsey has made insufficient allegations of fact with respect to his hostile work environment claim. (*See id.*)

As explained fully below, this Court concludes that Horsey's current complaint must be dismissed in its entirety for several reasons; specifically, because Horsey has failed to exhaust administrative remedies with respect to some claims; because certain claims lack sufficient allegations of fact; and because the *Egan* doctrine precludes any challenge to the agency's security clearance decision. However, bearing in mind Horsey's pro se status, this Court will grant Horsey leave to refile the complaint with respect to two claims: (1) his hostile work environment claim, which might be viable if additional facts are identified, and (2) his amorphous claim of retaliation and discrimination based on the State Department's proposal to suspend him, which, if properly pled, might be sufficient to avoid the *Egan* problem on the grounds established

---

[1] Page numbers herein refer to those that the Court's electronic filing system automatically assigns.

in the D.C. Circuit's serial holdings in *Rattigan v. Holder*, 689 F.3d 764, 765 (D.C. Cir. 2012) ("*Rattigan II*"), and *Rattigan v. Holder*, 780 F.3d 413, 415 (D.C. Cir. 2015) ("*Rattigan III*").   Accordingly, although Defendant's motion to dismiss is **GRANTED** with respect to the instant complaint, the Court will dismiss the complaint without prejudice and grant leave Horsey leave to refile it.   A separate order consistent with this memorandum opinion will follow.

## I.   BACKGROUND

### A.   Facts

The following facts are undisputed, unless otherwise noted.   Plaintiff Horsey was employed as an Information Technology Specialist in the Beltsville, Maryland office of the State Department's Information Resource Management Bureau "[a]t all times relevant to this [law]suit[.]"   (Compl. ¶ 3.)   According to the complaint, on February 3, 2011, "Mr. Shane Wardle, a white male colleague, made an allegation of work place violence against [Horsey], contending he was verbally assaulted[] by a slew of derogatory names[.]"   (*Id*. ¶ 11.)   An investigation allegedly followed, and Wardle's "allegations . . . against [Horsey] were inconclusive as to whether [Horsey] made any inappropriate or threatening remarks or exhibited any threatening behavior[.]"   (*Id*. ¶ 12.)   Nevertheless, on February 18, 2011, a Diplomatic Security investigator asked Horsey to attend psychological counseling voluntarily "in order to ascertain to what extent [he] might have an anger management problem."   (*Id*. ¶ 13.)   Horsey declined the counseling on the advice of a union representative.   (*See id*.)

Nearly three months later, on May 6, 2011, the Chief of the Adverse Actions Division of the Office of Personnel Security and Suitability referred Horsey to the State

Department's Office of Medical Services for further evaluation, directing that Horsey "submit to a medical review and evaluation, specifically by a psychologist." (*See id.*; *see also id.* Ex. A (Letter to Plaintiff from Paul D. Hallenbeck, Chief, Adverse Actions Division, Office of Personnel Security and Suitability, Bureau of Diplomatic Security, State Department, dated May 6, 2011).)  Horsey was also advised that his "[f]ailure to cooperate and/or provide the information where requested . . . may result in a recommendation for an adverse action regarding [his] eligibility for access to classified information." (*Id.*, Ex. A.)  In response, on that same day, Horsey allegedly "contacted[] Dr. Matt Ubben, the Sr. Clinical Psychologist for the [State Department] who was appointed to conduct the medical review and evaluation[,] to make [an] appointment." (*Id.* ¶ 14.)  Horsey also purportedly asked Dr. Ubben to permit a union representative to be present during the medical review and evaluation (*id.*); however, "citing American Psychological Association regulations[,]" Dr. Ubben allegedly advised Horsey "that a union representative could not be present[.]" (*Id.*)[2]

According to the complaint, Horsey contacted an EEO Counselor in June of 2011. (*See* Def.'s Mem., Ex. 5 (EEO Counselor's Report) at 1 (identifying the exact date as June 27, 2011); Compl. ¶ 22.)  During this consultation, Horsey asserted that the State Department had treated him differently because of his race on two occasions in February of 2011, to wit:

> Claim 1.  On 02/03/2011, *because of his race, Mr. Horsey believes he was discriminated against when he was subjected to a hostile work environment*

---

[2] The complaint asserts that Horsey "reasonably believed that the examination could result in disciplinary action against him" (*id.* ¶ 15), and as a result, he consulted "the Negotiated Labor – Management Agreement between the American Federation of Government Employees (AFGE) Local 1534 and United States Department of State Handbook" (*id.* ¶ 16), among other sources (*id.* ¶¶ 16–19). "Based on the information he [thus] obtained, [Horsey] maintained his right to representation at the medical review and evaluation and . . . refused to waive this right[.]" (*Id.* ¶ 20.)

characterized by his co-worker Mr. Shane Wardel accusing Mr. Horsey of calling Mr. Wardel a "cracker."

Mr. Horsey and Mr. Wardel are co-workers in the IT department at State. On 2/3/2011, Mr. Horsey was working on computer trouble tickets. Usually the procedure is you have to put your name on the computer problem ticket you are working on, and close it out when you are done. Mr. Horsey did not put his name on the ticket that evening because he didn't think anybody else would be coming in and he was just going to finish up the ticket and close it out right away. Mr. Wardel took one of the trouble tickets Mr. [H]orsey was working on and claimed it to be his own after Mr. Horsey completed the work. When Mr. Horsey asked Mr. Wardel if he took his ticket, Mr. Wardel became hostile and belligerent, and Mr. Horsey stormed out of the office. Mr. Wardel reported this incident and fabricated a complaint by alleging that Mr. Horsey pointed his finger in Mr. Wardel's face and alleges that Mr. Horsey called Mr. Wardel a "cracker." Mr. Horsey claims that is a racial term he never used, and Mr. Wardel made this a race issue and discriminated against Mr. Horsey because of his race.

Claim 2. *Because of his race, Mr. Horsey believes he was discriminated against when IRM and [Diplomatic Security Office] conducted an unfair investigation* on 02/18/2011 and they did not hear Mr. Horsey's side of the story and did not speak to people who could support Mr. Horsey's side of the story . . . .

(Def.'s Mem., Ex. 5 at 2 (emphasis added).)

On August 2, 2011, the Director of the Office of Personnel Security and Suitability issued a second written directive requiring Horsey to submit to a psychological evaluation. (*See* Compl. ¶ 23; *see also* Ex. C (Letter to Plaintiff from James C. Onusko, Director, Office of Personnel Security and Suitability, Bureau of Diplomatic Security, State Department, dated August 2, 2011 (hereinafter "August 2[nd] Letter").) This letter also advised Horsey that his "failure to cooperate . . . [would] result in a recommendation to suspend [his] security clearance . . . based on [his] unwillingness to complete the security clearance process." (August 2nd Letter, at 1.) Nevertheless, Horsey "continued to assert his right to representation" and declined to undergo a psychological evaluation without representation. (Compl. ¶ 24.) In the

meantime, Horsey continued to "report[] to work . . . and perform[] his regular duties, all of which required a security clearance." (*Id*. ¶ 25.)

According to the complaint, on November 29, 2011, Horsey "was informed that his security clearance had been suspended, and he had been placed on administrative leave." (*Id*. ¶ 28; *see also* Def.'s Mem., Ex. 8 (Letter to Plaintiff from James C. Onusko dated November 29, 2011).) Then, on December 9, 2011, the State Department's Human Resources department notified Horsey of a "proposal to suspend him indefinitely without pay based on [his] failure to maintain a security clearance." (Compl. ¶ 29; *see* Def.'s Mem. at 4.) Horsey's suspension became effective on March 16, 2012. (*See* Compl. ¶ 31.)

Acting on his belief that the indefinite suspension "was retaliation for engaging in . . . protected activity, both for his earlier attempted EEOC complaint in June 2011 and for his repeated assertions" of the right to have a union representative present during the medical evaluation, Horsey "contacted an EEOC counselor on January 12, 2012" (*id*. ¶ 32; *see* Def.'s Mem., Ex. 6 (EEO Counselor's Report)) and filed a formal EEOC complaint in February of 2012 (*see* Compl. ¶ 34). Meanwhile, the agency's decision to suspend him indefinitely was officially rescinded, and, instead, Horsey "was placed on administrative leave retroactively with[out] pay[,]" effective May 16, 2012. (*Id*. ¶ 35; *see* Def.'s Mem., Ex. 1 (Letter to Plaintiff from J. Robert Manzanares, Deputy Assistant Secretary, Bureau of Human Resources, State Department, dated May 16, 2012).)

Horsey's top secret security clearance was also formally revoked, by letter dated June 6, 2012. (*See* Compl. ¶ 36; Def.'s Mem., Ex. 2 (Letter to Plaintiff from Scott P.

Bultrowicz, Director, Diplomatic Security Service, State Department, dated June 6, 2012); *see also* Def.'s Mem., Ex. 3 (Letter to Plaintiff from Gregory B. Starr, Acting Assistant Secretary, Bureau of Diplomatic Security, State Department, dated July 25, 2013 (sustaining the clearance determination).)  Thereafter, on September 30, 2013, Horsey once again received formal notice that he was suspended indefinitely.  (*See* Compl. ¶ 49; Def.'s Mem., Ex. 7 (Letter to Plaintiff from Marcia Bernicat, Deputy Assistant Secretary for Human Resources, State Department, dated September 30, 2013) at 3.)  Horsey appealed the suspension decision administratively, resulting in the Merit Systems Protection Board's ("MSPB's") subsequent affirmance of the suspension determination.  The MSPB's decision became final on August 5, 2014.  (*See* Def.'s Mem., Ex. 4 (Initial Decision) at 13–14.)

### B.  Procedural History

Horsey filed the instant Title VII action on September 3, 2014.  His three-count complaint alleges unlawful discrimination based on race (Count One); retaliation for engaging in protected activities (Count Two); and exposure to a hostile and abusive working environment (Count Three).  The complaint—which Horsey has filed pro se— does not allocate particular allegations of fact to each of these claims; however, it appears that Horsey intends to assert that the State Department committed unlawful discrimination and/or retaliation and exposed him to a hostile work environment insofar as it (1) referred him for the psychological evaluations without just cause and without honoring his alleged right to union representation, (2) revoked his security clearance, and (3) indefinitely suspended him from his position as an information technology specialist, effective March 16, 2012.  (*See* Compl. ¶¶ 21, 31, 36.)

Defendant filed the instant motion to dismiss on January 9, 2015.  (*See* Def.'s

Mot. at 1.)  Defendant contends that Horsey's complaint must be dismissed on three

grounds; namely, because Horsey failed to exhaust all of his administrative remedies in

a timely fashion; because Horsey's attempt to challenge the revocation of his security

clearance is not justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988);

and because there are insufficient allegations in the complaint to support Horsey's

hostile work environment claim.  (*See* Def.'s Mem. at 1–2.)  Defendant's motion has

been fully briefed (*see* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 13; Def.'s

Reply in Supp. of Def.'s Mot., ECF No. 15), and is now ripe for this Court's

consideration.

## II.    LEGAL STANDARDS

### A.    Motions To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to

dismiss a complaint against it on the grounds that it "fail[s] to state a claim upon which

relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "Although 'detailed factual

allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure

to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action.'"  *Busby v. Capital One, N.A.*,

932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

554, 555 (2007)).  "[M]ere conclusory statements" are not enough to make out a cause

of action against a defendant.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

Of course, this Court is mindful that Horsey is proceeding in this matter pro se,

and that the pleadings of pro se parties are to be "liberally construed"—*i.e.*, "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted).  "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure[.]" *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).  In other words, even a pro se plaintiff must meet his burden of stating a claim for relief.  *See Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013).

### B.  Title VII Claims For Hostile Work Environment And Intentional Discrimination Or Retaliation

To state a Title VII hostile work environment claim, a plaintiff must allege "that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  The Court determines whether a hostile work environment exists by considering "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Likewise, when a plaintiff contends that his employer has intentionally discriminated against him with respect to the terms and conditions of his employment, or retaliated against him for his engagement in protected activity, a plaintiff must make allegations of fact that, if true, would establish the elements of a discrimination or retaliation claim.  There are two statutory elements for an employment discrimination

action under Title VII: "[(1)] the plaintiff suffered an adverse employment action [(2)] because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). To prove a retaliation claim under Title VII, a plaintiff must show (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employers; and (3) that a causal link connects the two. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

Notably, an employee who seeks to bring a claim of discrimination or retaliation in federal court must first exhaust available administrative remedies. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) ("Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." (internal quotation marks and citation omitted)). As a general matter, this means that the employee must contact an EEO Counselor to initiate informal counseling "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see Rafi v. Sebelius*, No. 08-5384, 2010 WL 2162053, at *1 (D.C. Cir. May 24, 2010) (affirming dismissal of plaintiff's Title VII claims because plaintiff contacted counselor outside of 45-day period). If the matter is not resolved informally, the employee may then file a formal complaint with the agency, *see* 29 C.F.R. §§ 1614.105(d), 1614.106(a); however, "he or she must do so within 90 days of receipt of the agency's final decision 'or after a complaint has been pending for at least 180 days.'" *Crawford v. Johnson*, No. 14-cv-436, 2016 WL 777910, at *4 (D.D.C. Feb. 26, 2016) (quoting *Koch v. Walter*, 935 F. Supp. 2d 143, 149 (D.D.C. 2013)).

Although these reporting and filing deadlines are not jurisdictional and are subject to waiver, estoppel, and equitable tolling, *see Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (citations omitted), it is well established that the plaintiff-employee "who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience[,]" *id.* at 13 (internal quotation marks and citation omitted). "A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is the appropriate vehicle to challenge an alleged failure to exhaust administrative remedies under Title VII[,]" *Blue v. Jackson*, 860 F. Supp. 2d 67, 72 (D.D.C. 2012) (internal citation and quotation marks omitted), and in evaluating such a motion, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 85 (D.D.C. 2012) (quoting *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997)).

Significantly for present purposes, the administrative exhaustion requirement functions like a statute of limitations, *see Crawford*, 2016 WL 777910, at *4, which means that the defendant may raise the plaintiff's failure to exhaust administrative remedies as an affirmative defense, *see Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 84–85 (D.D.C. 2014). However, just as a court may dismiss a claim for running afoul of the statute of limitations if "the complaint on its face is conclusively time-barred," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), a court may likewise dismiss a Title VII action for failure to exhaust administrative remedies if the failure to exhaust is

evident on the face of the complaint, *see, e.g.*, *Alfred v. Scribner Hall & Thompson, LLP*, 473 F. Supp. 2d 6, 9 (D.D.C. 2007) (dismissing a Title VII claim where even a liberal construction of the complaint indicated that the pro se plaintiff had failed to exhaust the necessary administrative remedies).

## III.   ANALYSIS

Horsey's complaint consists of a lengthy recitation of facts regarding various alleged wrongs followed by three claims that incorporate all preceding paragraphs; consequently, it is exceedingly difficult to determine the exact nature of Horsey's claims, and also to ascertain which of the factual allegations gives rise to which of the stated causes of action.  Construing the pleading liberally and drawing all inferences in Plaintiff's favor, this Court discerns that Horsey has brought four separate claims against his employer: (1) a hostile work environment claim, the basis of which is unclear because the complaint never identifies the particular facts that purportedly give rise to the claim (*see* Compl. ¶ 57); (2) a discrimination claim based on repeated orders from various State Department officials that he undergo a psychological evaluation and the agency's refusal to permit Horsey to have union representation during that evaluation (*see id.* ¶ 21); (3) a retaliation claim due to the State Department's decision to revoke his security clearance (*see id.* ¶¶ 41–46); and (4) a discrimination and retaliation claim based on the agency's proposal to suspend Horsey indefinitely without pay following the suspension of his security clearance (*see id.* ¶¶ 31–32).  As explained below, all four of these claims must be dismissed for various reasons, but because the first and fourth claims might be viable with more refined pleading, this Court will permit Horsey to redraft and refile his complaint with respect to those claims.

### A.  Horsey's Complaint Fails To State A Hostile Work Environment Claim

As mentioned above, a plaintiff must allege "that his employer subjected him to discriminatory intimidation, ridicule, and insult" in order to state a hostile work environment claim, and the alleged abuse must be "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201; *accord Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013); *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011).  Given this high hurdle, even the liberal interpretation that is afforded to pro se pleadings cannot save Horsey's hostile work environment claim, which contains no clear statement regarding the particular facts and circumstances that support Horsey's bald contention that he was subjected to a hostile work environment.  (*See* Compl. ¶¶ 6–50.)  Instead, the section of the complaint that pertains to the hostile work environment claim simply "reallege[s] and incorporate[s]" all the previous paragraphs of the complaint (*id.* ¶ 57) without further explanation, and the brief Horsey filed in opposition to Defendant's motion to dismiss also fails to highlight the allegations of fact in the complaint that support the hostile work environment contention.

What is more, even when *all* of the facts that Horsey has alleged in the complaint as a whole are considered, his pleading is conspicuously devoid of any allegation that Horsey himself was subjected to intimidation, ridicule, or insult on the basis of his race, much less race-based affronts that were so severe or pervasive that the conditions of his employment were altered.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).  To the contrary, the complaint's general litany of facts actually appears to *undermine*

Horsey's hostile work environment contention, inasmuch as the complaint specifically states that Horsey "reported to work . . . and performed his regular duties" even while the alleged investigation into the Wardle-related incident was ongoing (Compl. ¶ 25), and Horsey persistently "maintain[ed] his right to representation following the letters dated May 6, 2011 and August 2, 2011," continuing to do so up "until the date of his suspension on November 29, 2011," (*id.*; *see also id.* ¶ 26 (alleging that "[a]t no point[] did [State Department] officials take any action to remove [Horsey] from his post or raise an issue regarding [his] ability to competently handle classified material").)

In short, even the most liberal review of Horsey's complaint fails to unearth allegations that describe a work environment consisting of "discriminatory intimidation, ridicule, and insult" based on Horsey's race that was so "severe or pervasive to alter the conditions of [his] employment[.]" *Baloch*, 550 F.3d at 1201. Consequently, Horsey's hostile work environment claim as alleged in this complaint must be dismissed. However, given Horsey's pro se status and the confusion within the complaint regarding the factual basis for this and other claims, the Court will permit Horsey to revise his claim in the context of an amended complaint, if he so chooses, as explained below.

### B. Horsey Did Not Exhaust All Administrative Remedies With Respect To The Allegedly Discriminatory Medical Referrals And Denials of Union Representation

As this Court interprets it, Horsey's complaint alleges that he was ordered to undergo a medical and psychological evaluation on three separate occasions: February 18, 2011; May 6, 2011; and August 2, 2011. (*See* Compl. ¶¶ 13, 21, 23; Def.'s Mem. at 6.) Both parties construe the pleading as making the allegation that each of these directives, along with the agency's concomitant refusal to allow Horsey to bring a union representative to the evaluations, was a discrete discriminatory action. (*See*

Compl. ¶¶ 13, 21, 23; Def.'s Mem. at 8; *see also* Compl. ¶ 21 ("Plaintiff felt that he was . . . the victim of unlawful discrimination both because of the referral itself and because of the refusal of representation . . .").)   And the complaint specifically alleges that Horsey contacted an EEOC counselor in "June 2011" with respect to the referrals of February 18, 2011, and May 6, 2011.  (*See* Compl. ¶ 22.)[3]  This EEOC contact was well outside the 45-day window that the Title VII regulations prescribe.  29 C.F.R. § 1614.105(a)(1).  Furthermore, the complaint alleges that Horsey's next contact with an EEO Counselor occurred on January 12, 2012 (*see* Compl. ¶ 32), which is 163 days after the alleged referral on August 2, 2011 (*see* Compl. ¶ 23)—far beyond the applicable 45-day reporting period.

Horsey himself appears to acknowledge that his EEO contacts were untimely, responding to Defendant's statements regarding the lack of exhaustion by admitting, with respect to at least one of the discrimination claims, that the claim "was untimely, due to the terminal illness of his father."  (Pl.'s Opp'n at 3.)  Assuming that Horsey intended for this remark to invoke the principle of equitable tolling, it is manifestly insufficient to establish that such tolling is warranted, because a tardy plaintiff must "show[] (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing[]" in order to receive the benefit of equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418

---

[3] Documents outside the four corners of the complaint confirm Horsey's estimation of the timing—the EEO Counselor's Report indicates that initial contact took place on June 27, 2011. (*See* Def.'s Mem. at 8 (citing June 2011 EEO Counselor's Report, Ex. 5 to Def.'s Mem., ECF No. 11-4, at 1)).  For the purpose of the instant motion to dismiss, however, this Court relies solely upon the complaint's more general (but nonetheless accurate) factual allegation.

(2005)); *see also Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013)

(upholding the district court's finding that the plaintiff was not entitled to equitable

tolling because, without explanation or excuse and with full knowledge of the EEOC

time limits, plaintiff delayed unnecessarily in filing her Intake Questionnaire with the

EEOC and failed to communicate with the EEOC about the filing of her charge).

Neither of these circumstances appears anywhere in Horsey's complaint, or, for that

matter, anywhere in his brief in opposition to Defendant's motion to dismiss.

Consequently, this Court agrees with Defendant that the Title VII discrimination

claims in Horsey's complaint that are based on the three alleged instances in which

Horsey was referred to a medical/psychological evaluation and denied union

representation at that evaluation must be dismissed for lack of administrative

exhaustion.[4]

### C. *Egan* Bars Judicial Review Of Horsey's Contention That The Revocation Of His Security Clearance Was Retaliatory

Defendant asserts that Horsey's third claim—*i.e.*, that the revocation of his

security clearance was an act of unlawful retaliation (*see* Compl. ¶ 46)—should be

dismissed per the Supreme Court's holding in *Department of Navy v. Egan*, 484 U.S.

518 (1988). In *Egan*, the Supreme Court held that "the protection of classified

information must be committed to the broad discretion of the agency responsible, and

this must include broad discretion to determine who may have access to it." *Egan*, 484

---

[4] The State Department also initially argued that Horsey failed to file a timely appeal of the MSPB's final ruling, which had affirmed the agency's decision to place Plaintiff on indefinite suspension without pay. (*See* Def.'s Mem. at 8-10.) However, the agency subsequently withdrew this argument after determining that the delay was due to Horsey's *in forma pauperis* status. (*See* Def.'s Reply, ECF No. 15, at 4). In light of this withdrawal, Defendant's arguments regarding the untimely appeal were not considered by the Court when it assessed the merits of Defendant's exhaustion contention. *See, e.g.*, *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 7 n.6 (D.D.C. 2009).

U.S. at 529.  According to the *Egan* Court, "[i]t is not reasonably possible for an outside nonexpert body to review the substance of a judgment [about security clearance] and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence[,]" *id*.; therefore, an agency's decision to deny or revoke an employee's security clearance is precluded from judicial review, *see id.* at 529.  The D.C. Circuit has long applied *Egan*'s preclusion principle not only to bar lawsuits that seek to challenge security clearance determinations directly, *see, e.g.*, *Ryan v. Reno*, 168 F.3d 520, 523 (D.C. Cir. 1999) (holding that a Department of Justice decision that job applicants were ineligible for security clearances was not reviewable); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 395–96 (D.C. Cir. 1990) (finding defendant's refusal to clear a foreign service officer for overseas postings unreviewable), but also to prevent the progression of employment discrimination and retaliation actions that are, at bottom, based on an alleged improper denial or revocation of  security clearance, *see Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005) ("[E]mployment actions based on denial of security clearance are not subject to judicial review, including under Title VII"); *Ryan*, 168 F.3d at 524 (D.C. Cir. 1999) (holding that "under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII").  And according to the State Department here, "review of [Horsey's] . . . claim[] would constitute an especially pernicious violation of *Egan*, because it would intrude into Executive Branch security clearance decisions."  (*See* Def.'s Mem. at 2.)

As a general matter, this Court agrees.  In paragraphs 42 through 45 of his complaint, Horsey appears to launch a vigorous attack on the agency's decision to

revoke his security clearance.  (*See* Compl. ¶¶ 42-45.)  For example, he argues that the agency adjudicator "focused entirely on the Plaintiff not having the requested psychological evaluation" (Compl. ¶ 42), and that the adjudicator failed to analyze "other factors or variables, or the Plaintiff's past favorable conduct and work performance while holding a security clearance."  (Compl. ¶ 43; *see also id.* ¶ 46 (contesting the adjudicator's "unbalanced analysis").)  Given these assertions, it certainly seems as if Horsey is asking this Court to review the adjudicator's analysis regarding the revocation of Horsey's security clearance, which is precisely the type of judgment that *Egan* instructs must be left to the Executive Branch.  *See Egan*, 484 U.S. at 527–30 (holding, with respect to a potential naval officer who was denied security clearance because of his prior criminal record and history of alcoholism, that the agency's clearance decision was not reviewable, given that the Executive Branch has the constitutional authority to protect national security information and that authority includes controlling who has access to such information).

The only case that Horsey cites to support his assertion that his claim is not precluded under *Egan* is the Federal Circuit decision that was the precursor to the Supreme Court's *Egan* opinion.  *See Egan v. Dep't of Navy*, 802 F.2d 1563 (Fed. Cir. 1988) (holding that the MSPB has the authority to review an agency's reasons for a security clearance determination), *rev'd*, 484 U.S. 518 (1988).  But the Supreme Court overruled that decision as mentioned, and it expressly concluded that the substance of an agency's decision to deny or revoke security clearances is not reviewable.  Horsey's citations to excerpts from an "Adjudicative Guideline" that he claims the State Department violated when it revoked his security clearance (*see* Compl. ¶¶ 41, 44), as

well his contention that the Department's analysis was inadequate or inaccurate (*see id.* ¶¶ 40, 42–45), are similarly inapposite, and if anything, they simply serve to underscore that he is seeking to have this Court "second-guess[] the agency's national security determination[]" in exactly the same manner that *Egan* prohibits.  *See Bland v. Johnson*, 66 F. Supp. 3d 69, 73 (D.D.C. 2014) ("In order for a court to find that discrimination or retaliation, rather than an agency's stated security clearance concerns, was the reason for an adverse employment action, the court would have to inquire into and pass judgment on the validity of the agency's security determinations, which *Egan* does not permit the court to do.").

Thus, this Court finds that Horsey's claim challenging the revocation of his security clearance is barred under *Egan* and must be dismissed.

### D. The Discrimination And Retaliation Claims Arising From Horsey's Proposed Indefinite Suspension Might Satisfy The Exception to *Egan* Outlined in *Rattigan*, But Must Be Repled

Although it is well established that the Supreme Court's *Egan* doctrine generally precludes discrimination claims that relate to security clearance decisions, there is also a clearly defined exception to *Egan* that might have some applicability here, given the allegations that Horsey has made in the complaint.  Specifically, the D.C. Circuit has held that the *Egan* doctrine does *not* preclude judicial review of a revocation of an employee's security clearance if that employee brings a Title VII claim that is based on an allegedly false and discriminatory report or referral to the securities clearance authorities.  *See Rattigan II*, 689 F.3d at 771 (holding that a plaintiff's "Title VII claim may proceed only if he can show that agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false").  A plaintiff seeking to advance a *Rattigan*-based Title VII claim related to an agency's

revocation of his security clearance must show that: (1) the agency employee had a discriminatory or retaliatory motive to report the plaintiff or to refer false information about him, and (2) the reporting employee knew that the report or referral of information was false. *See id.* at 771. In addition, both the "[m]otive and knowing falsity must unite in the same person." *Rattigan III*, 780 F.3d at 416.

This Court reads Paragraph 32 of Horsey's complaint to allege that the Department's proposal to suspend his employment indefinitely, which occurred after his security clearance was suspended, was a discriminatory act that was undertaken in "retaliation for [Plaintiff] engaging in . . . protected activity, both for his earlier attempted EEOC complaint in June 2011 and for his repeated assertions with respect to his *Weingarten* rights[.]" (Compl. ¶ 32 (emphasis added).)[5] Defendant focuses on the fact that the challenged proposed suspension of his employment allegedly resulted from the suspension of Horsey's security clearance, and argues that the Court cannot review the proposed suspension claim under *Egan*. (*See* Def.'s Mem. at 10-15.) Defendant is undoubtedly correct to contend that *Egan* precludes this claim *if* Horsey's contention is solely that the indefinite suspension violated Title VII because it was an adverse employment action that stems from the wrongful security clearance revocation. (*See supra* Part III.C.) *See also Ryan*, 168 F.3d at 524 ("[A]dverse employment action[s] based on [a] . . . revocation of a security clearance [are] not actionable under Title VII."). But Horsey's Title VII claim might survive Defendant's *Egan* argument under

---

[5] "*Weingarten* rights" refers to the Supreme Court's decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), in which the Court upheld the National Labor Relations Board's determination that, under section 7 of the National Labor Relations Act, 29 U.S.C. § 157, an employee represented by a union is entitled to union representation during an interview that the employee reasonably believes will result in discipline. *See Weingarten*, 420 U.S. at 251. In this case, Plaintiff appears to assert that these rights extend to the medical evaluations he was ordered to undergo. (*See* Compl. ¶ 15.)

the *Rattigan* carve-out; that is, if the alleged *basis* for the wrongful revocation of Horsey's security clearance was a knowingly false and discriminatory report or referral. *See Rattigan II*, 689 F.3d at 770.

Horsey's complaint appears to contain at least some factual kernels that might support a Title VII claim that satisfies the *Rattigan* requirements.  He alleges, for example, that Wardle falsely accused him of calling Wardle derogatory names (*see* Compl. ¶ 11), which triggered the subsequent call for an investigation (*see id.* ¶ 12), and despite the "inconclusive" nature of that investigation and Horsey's "unblemished record filled with awards and commendations for excellence and bereft of any disciplinary actions" (*id.* ¶ 13), the false Wardle accusation prompted the authorities to require him to undergo the psychiatric evaluation that ultimately had repercussions for maintaining his security clearance (*see id.*; *see also id.* ¶ 32 (reiterating Horsey's belief that, not only did the agency err with regard to its security clearance determination, but that the indefinite suspension was "retaliation for engaging in a protected activity" and that "he was being unfairly targeted and the victim of unlawful discrimination").)

The State Department has neither identified nor squarely addressed the existence of a *Rattigan*-type Title VII claim in Horsey's complaint, and Horsey's pleading only gestures in its direction.  Furthermore, it is not clear from the facts as alleged exactly *when* the referral to the security clearance office occurred, much less *who*, in particular, made the referral, which is information that is necessary for the Court to determine whether or not the motive and knowing falsity elements "unite in the same person." *Rattigan III*, 780 F.3d at 416.  Thus, while the current complaint contains insufficient allegations regarding the circumstances that led to Horsey's indefinite suspension to

state a *Rattigan*-type Title VII claim plainly, it appears that a viable claim of this nature might be lurking within this case.  Accordingly, this Court will dismiss the complaint's current Title VII claim with respect to indefinite suspension, but will permit Horsey to redraft and refile his complaint with respect to this claim, in light of his pro se status.

## IV.   CONCLUSION

Horsey has alleged that the State Department discriminated against him, retaliated against him, and subjected him to a hostile work environment when it required that he undergo a psychiatric evaluation without union representation; suspended his top secret security clearance; and proposed that his employment be indefinitely suspended.  For the reasons explained above, Horsey's complaint is deficient in several respects, and Defendant's motion to dismiss the complaint must be **GRANTED**.  Some of Horsey's claims—*i.e.,* the discrimination claims based on each of the medical evaluation referrals and his challenge to security clearance revocation— are time-barred or precluded, and, therefore, fail as a matter of law.  But his contention that he was subjected to a hostile work environment and suffered retaliation and discrimination on the basis of his proposed indefinite suspension are merely insufficiently pled, not legally barred.  Therefore, as stated in the accompanying order, the complaint will be dismissed, but Horsey will have 21 days within which to file an amended complaint with respect to his hostile work environment and indefinite suspension claims.

DATE:  March 22, 2016            *Ketanji Brown Jackson*
                                 KETANJI BROWN JACKSON
                                 United States District Judge