|  |  |
|---|---|
| JOHN E. HORSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 1:14-cv-1568 (KBJ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Pro se plaintiff John E. Horsey alleges that he was a "remarkable employee" who amassed numerous awards to reflect his "outstanding" employment record throughout his decades-long tenure as an employee with Defendant United States Department of State ("State").  (Am. Compl., ECF No. 22, ¶ 24.)  Still, after Horsey engaged in a work-related altercation with a co-worker in 2011, State required Horsey to undergo a mental evaluation, and when Horsey refused to be evaluated without a union representative present, Horsey's security clearance was suspended and he was placed on administrative leave.  (*See id.* ¶ 34.)  State later suspended Horsey indefinitely without pay and revoked his security clearance altogether.  (*See id.* ¶¶ 37, 39.)  In the instant legal action, Horsey maintains that State undertook those employment actions because he is African American (*see id.* ¶¶ 8, 22); indeed, his two-count complaint claims that State discriminated against him on the basis of his race and subjected him to a hostile work environment, both in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq.* (*see id.* ¶¶ 48–54; 55–59).

Before this Court at present is the State Department's motion to dismiss Horsey's amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mot."), ECF No. 28.) For the reasons explained below, this Court agrees with State that Horsey's amended complaint misses the mark, primarily because the pleading does not allege that Horsey suffered an adverse employment action *because of* his race, nor does it describe discriminatory conduct that is severe or pervasive enough to make his hostile work environment claim remotely plausible. Consequently, Horsey's amended complaint fails to allege facts that, if true, would support his claim that State discriminated against him on the basis of his race. As a result, the agency's motion to dismiss must be **GRANTED**, and Horsey's amended complaint must be **DISMISSED**. A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

### A.    Alleged Facts[1]

Horsey worked for the State Department as an Information Technology Specialist in the Information Resource Management Bureau until his "Top Secret" security clearance was revoked in June of 2012. (*See* Am. Compl. ¶¶ 3, 39.) According to the amended complaint, Horsey was involved in a workplace dispute with Shane Wardle, a Caucasian male co-worker, on February 3, 2011. (*See id.* ¶ 6.) Wardle allegedly sent an email to his and Horsey's first and second line supervisors "moments after the

---

[1] The facts recited herein are drawn from Horsey's amended complaint and are accepted as true for the purpose of the Court's analysis of State's motion to dismiss. *See, e.g.*, *Suarez v. Colvin*, 140 F. Supp. 3d 94, 99 (D.D.C. 2015).

alleged incident occurred," and in that email, Wardle allegedly "reported a false claim/allegation" about Horsey.  (*Id.*)  The complaint contends that the two supervisors met with Wardle and Horsey the following day to discuss the incident, but "Wardle would not repeat the claims made in the email[] in the presence of [Horsey][.]"  (*Id.* ¶ 7.)  Horsey "adamantly denied the allegations" from Wardle's email, and one of the supervisors "deemed the meeting a 'stalemate'" and referred the incident "to Diplomatic Security for investigation."  (*Id.*)  The complaint alleges that the supervisor who referred the matter for investigation knew that Wardle had "fil[ed] several false allegations against other U.S. Department of State employees with impunity[.]"  (*Id.* ¶ 8.)

According to the amended complaint, "[b]etween February 4, 2011 and February 23, 2011," a Diplomatic Security Special Agent "interviewed Mr. Wardle's witnesses as a part of his investigation, but did not interview any witnesses on [Horsey's] behalf."  (*Id.* ¶ 9.)  The complaint further alleges that none of the witnesses interviewed "were present or witnessed the alleged February 3, 2011 event."  (*Id.*)  The Special Agent conducting the investigation allegedly "ran a background check on Mr. Wardle . . . and was aware of [Wardle's] history of filing false claims[.]"  (*Id.* ¶ 23.)

The Special Agent interviewed Horsey on February 18, 2011, and asked Horsey "if he would be willing to speak with a Department[-]provided mental health professional concerning what may be an anger management problem."  (*Id.* ¶ 19.)  Horsey allegedly "said he wanted to think about it" and thereafter sought advice from his union, which told him "that he should not voluntarily meet with anyone in the medical unit."  (*Id.* ¶ 26.)  According to the amended complaint, on May 6, 2011,

Horsey received a letter from the Office of Personnel Security and Suitability Bureau of Diplomatic Security, which stated that Horsey was being referred to the Office of Medical Services "for review and evaluation" (*id.* ¶ 27), and that "[p]ursuant to retention of [Horsey's] continued security clearance eligibility," Horsey would have to schedule such an evaluation (*id.* ¶ 29). The letter also included an advisory "that non-compliance with this directive could have negative consequences with regard to [Horsey's] security clearance eligibility." (*Id.*) The amended complaint alleges that Horsey requested that any evaluation be conducted with a union representative present, but this request was allegedly denied. (*See id.* ¶¶ 29, 30.) Horsey then "continued to receive requests/demands to undergo the mental evaluation" (*id.* ¶ 31), and he "continued to invoke his right to have a representative present for any interview relating to the matter under investigation" (*id.* ¶ 33).

Horsey's amended complaint states that the investigation into the incident with Wardle "was determined to be 'inconclusive'" and "was closed on March 12, 2011." (*Id.* ¶ 31.) However, Horsey's "Top Secret Security Clearance was suspended and [Horsey] was placed on administrative leave with pay on November 29, 2011[.]" (*Id.* ¶ 34.) On December 9, 2011, Horsey received a "Proposal for Indefinite Suspension Without Pay" letter (*id.* ¶ 35), and was "suspended indefinitely on Mar[ch] 16, 2012" (*id.* ¶ 37). Between receiving the letter and his indefinite suspension going into effect, Horsey had "attended an appeal hearing on January 17, 2012" (*id.* ¶ 36), and his indefinite suspension without pay was later rescinded (*see id.* ¶ 38). However, on June 6, 2012, Horsey was notified "that his Top Secret [Security] Clearance ha[d] been revoked[.]" (*Id.* ¶ 39.)

**B.**     **Procedural History**

1.     This Court's Dismissal Of Horsey's Initial Complaint

Horsey initiated the instant lawsuit, pro se, on September 15, 2014.  (*See* Compl., ECF No. 1.)  His initial complaint included three counts:  (1) discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*see* Compl. ¶¶ 51–53); (2) retaliation for engaging in protected activity, in violation of Title VII (*see id.* ¶¶ 54–56); and (3) hostile work environment, also in violation of Title VII (*see id.* ¶¶ 57–59).  State filed a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on January 9, 2015 (*see* Defs.' Orig. Mot. to Dismiss, ECF No. 11), and Horsey filed a motion for summary judgment on December 16, 2015 (*see* Pl.'s Mot. for Summ. J., ECF No. 17).  On March 22, 2016, this Court issued a written opinion that granted State's motion to dismiss and denied Horsey's summary judgment motion as moot, but that also gave Horsey leave to file an amended complaint.  (*See* Order, ECF No. 20); *see also Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256 (D.D.C. 2016).

In its Memorandum Opinion, the Court interpreted Horsey's complaint as bringing "four separate claims" against the State Department:

> (1) a hostile work environment claim . . . ; (2) a discrimination claim based on repeated orders from various State Department officials that [Horsey] undergo a psychological evaluation and the agency's refusal to permit Horsey to have union representation during that evaluation; (3) a retaliation claim due to the State Department's decision to revoke [Horsey's] security clearance; and (4) a discrimination and retaliation claim based on the agency's proposal to suspend Horsey indefinitely without pay following the suspension of his security clearance.

*Horsey*, 170 F. Supp. 3d at 265 (internal citations omitted).  The Court then dismissed the claims that were "based on the three alleged instances in which Horsey was referred

to a medical/psychological evaluation and denied union representation at that evaluation . . . for lack of administrative exhaustion." *Id.* at 267. The Court further dismissed Horsey's claim "that the revocation of his security clearance was an act of unlawful retaliation" on the grounds that the Supreme Court's decision in *Department of Navy v. Egan* barred any such claim. *Id.* at 267–69; *see also Egan*, 484 U.S. 518 (1988).[2]

Notably, this Court also dismissed Horsey's hostile work environment claim, because Horsey's complaint was "conspicuously devoid of any allegation that Horsey himself was subjected to intimidation, ridicule, or insult on the basis of his race, much less race-based affronts that were so severe or pervasive that the conditions of his employment were altered." *Horsey*, 170 F. Supp. 3d at 266. However, the Court provided Horsey with permission to "revise his claim" by filing an amended complaint, "given Horsey's pro se status and the confusion within the complaint regarding the factual basis for this and other claims[.]" *Id.* The Court further provided Horsey with leave to amend the discrimination and retaliation claims that might plausibly arise from the referral to security clearance authorities and Horsey's ultimate indefinite suspension, based on the Court's determination that "the *Egan* doctrine does *not* preclude judicial review of a revocation of an employee's security clearance if that

---

[2] The Supreme Court held in *Egan* that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." 484 U.S. at 529. The Court reasoned that an agency's decision denying or revoking an employee's security clearance is precluded from judicial review, because "[i]t is not reasonably possible for an outside nonexpert body to review the substance of a judgment [about security clearance] and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* In its opinion dismissing Horsey's initial complaint, this Court concluded that "Horsey is asking this Court to review the [agency] adjudicator's analysis regarding the revocation of Horsey's security clearance, which is precisely the type of judgment that *Egan* instructs must be left to the Executive Branch." *Horsey*, 170 F. Supp. 3d at 268 (citing *Egan*, 484 U.S. at 527–30).

employee brings a Title VII claim that is based on an allegedly false and discriminatory report or referral to the securities clearance authorities." *Id.* at 269 (emphasis in original) (citing *Rattigan v. Holder* (*Rattigan II*), 689 F.3d 764, 771 (D.C. Cir. 2012)).[3] The Court based its grant of leave to amend on its conclusion that, "while the current complaint contains insufficient allegations regarding the circumstances that led to Horsey's indefinite suspension to state a *Rattigan*-type Title VII claim plainly, it appears that a viable claim of this nature might be lurking within this case." *Id.* at 270.

### 2. Horsey's Amended Complaint And The Parties' Subsequent Motion-To-Dismiss Briefing

On April 12, 2016, Horsey filed an amended complaint that contains two counts of "Racial Discrimination in Violation of Title VII[.]" (Am. Compl. ¶¶ 48–54, 55–59.)[4] Count One claims that State's "conduct as alleged at length herein constitutes a Title VII discrimination based on race" (*id.* ¶ 49), and notably, the particular conduct that Count One references is the fact that "[Horsey] was suspended from his position indefinitely when [his] security [c]learance was revoked because he refused to

---

[3] In a series of precedential cases between 2011 and 2015, the D.C. Circuit determined that the *Egan* doctrine does not preclude judicial review of a security clearance revocation where the employee brings a Title VII claim based on an allegedly false and discriminatory report or referral to security clearance authorities. *See Rattigan v. Holder* (*Rattigan I*), 643 F.3d 975 (D.C. Cir. 2011), *on reh'g*, *Rattigan II*, 689 F.3d 764; *Rattigan v. Holder* (*Rattigan III*), 780 F.3d 413 (D.C. Cir. 2015); *see also Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 181 (D.D.C. 2016) (noting that *Egan* poses no bar to a plaintiff who challenges an alleged discriminatory referral to security clearance authorities on *Rattigan* grounds). With respect to Horsey's initial complaint, this Court explained that "[a] plaintiff seeking to advance a *Rattigan*-based Title VII claim related to an agency's revocation of his security clearance must show that: (1) the agency employee had a discriminatory or retaliatory motive to report the plaintiff or to refer false information about him, and (2) the reporting employee knew that the report or referral of information was false." *Horsey*, 170 F. Supp. 3d at 269 (citing *Rattigan II*, 689 F.3d at 771). Furthermore, "both the 'motive and knowing falsity must unite in the same person.'" *Id.* (alteration omitted) (quoting *Rattigan III*, 780 F.3d at 416). This Court thus determined that "Horsey's Title VII claim might survive Defendant's *Egan* argument under the *Rattigan* carve-out . . . if the alleged *basis* for the wrongful revocation of Horsey's security clearance was a knowingly false and discriminatory report or referral." *Id.* at 270 (emphasis in original) (citing *Rattigan II*, 689 F.3d at 770).

[4] Horsey does not appear to raise a retaliation claim in his amended complaint. (*See generally* Am. Compl.)

participate in an unlawful [evaluation] and meet with medical personnel without a representative present" (*id.* ¶ 52). Count Two alleges that State subjected Horsey to a "hostile and abusive work environment" (*id.* ¶ 56), because it "ignored [Horsey's] rights . . . , [Horsey] was required to undergo an evaluation, and his white counterpart was not" (*id.* ¶ 57), and Horsey "endured discrimination that was pervasive and regular[] (in the form of emails, phone calls, and letters, threatening [Horsey's] employment)" (*id.* ¶ 58). Horsey attached 75 pages of exhibits to the amended complaint (*see* ECF No. 22-1), and the pleading seeks both damages and equitable relief (*see* Am. Compl. at 12–13).[5]

State responded to Horsey's amended complaint with a renewed motion to dismiss, filed on July 19, 2016. (*See* Defs.' Mot.) On September 6, 2016, this Court advised Horsey that he had an obligation to respond to State's motion, at the risk of having the motion deemed conceded. (*See* Min. Order of Sept. 6, 2016). Horsey did not respond as directed, and on October 28, 2016, the Court granted State's motion as conceded, and dismissed Horsey's case without prejudice. (*See* Order Granting Mot. to Dismiss, ECF No. 30; *see also* Mem. Op. Granting Mot. to Dismiss, ECF No. 31.) On November 16, 2016, Horsey moved to reopen the case (*see* Mot. to Reopen Case, ECF No. 32), and the Court granted his motion (*see* Min. Order of Nov. 18, 2016).

State's motion to dismiss became ripe on December 2, 2016. (*See* Pl.'s Opp'n to Defs.' Mot., ECF No. 33.) In the motion, State contends that Horsey's amended complaint "suffers the same factual and legal deficiencies as his initial complaint."

---

[5] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

(Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), ECF No. 28-1, at 1.) In particular, State argues that the amended complaint's discrimination count must be dismissed because the pleading fails to allege that Horsey suffered an adverse employment action. (*See id.* at 6–8.) State further maintains that, to the extent that Horsey's amended complaint challenges employment actions taken pursuant to the suspension or revocation of his Security Clearance, any such claim necessarily fails on *Egan* grounds, because the *Rattigan* carve-out does not apply. (*See id.* at 8–11.)

In this regard, State argues that the *Rattigan* doctrine does not apply in a case such as this, because the *Rattigan* exception to *Egan* applies only where "non-security personnel report security concerns about an individual[] and the agency's security personnel subsequently determine that the reported security concerns are *unfounded*"— *i.e.*, where "'the designated agency experts reached a final security clearance determination that was *favorable* to the plaintiff'" (Defs.' Mem. at 8 (first emphasis added; second emphasis in original) (quoting *Rattigan I*, 643 F.3d 975, 983 (D.C. Cir. 2011), *vacated by Rattigan v. Holder*, No. 10-5014, 2011 WL 4101538 (D.C. Cir. Sep. 13, 2011)))—which Horsey does not allege here. State further maintains that even if the *Rattigan* doctrine applies in a case such as this one, Horsey's amended complaint fails to allege "unity in the same person who allegedly made the false referral and the employee who reported [Horsey][.]" (*Id.* at 9 (internal quotation marks, citation, and alterations omitted).) Finally, State insists that Horsey's amended complaint does not state a plausible hostile work environment claim, because it contains only "conclusory allegation[s]" that "fail[] to specify the contents of the emails, phone calls or threatening letters and whether those communications were infested with racial

overtone[s][,]" and "further fail[s] to identify the author(s) of those communications and the frequencies of those emails, letters, and phone calls." (*Id.* at 12.)

Horsey responds to State's motion to dismiss by insisting that he "had a right to have a [union] representative present during *all* interviews concerning this matter"; that "this specific right was denied"; and that the officials who investigated Horsey "were fully aware" of the complaining co-worker's "history of [i]nitiating and filing [f]alse [r]eports and [i]nitiating [u]nfounded [c]laims against other fellow [f]ederal and [c]ontractor [e]mployees." (Pl.'s Response to Defs.' Reply in Supp. of Mot. to Dismiss Am. Compl. ("Pl.'s Surreply"), ECF No. 35, at 1.) Horsey further maintains that "[t]he information that was used to prompt a referral to the Office of Medical Services [] was directly related to a biased investigation conducted by Diplomatic Security[.]" (*Id.* at 2.) Finally, Horsey claims that State's motion "failed to show that [Horsey] did not plead enough facts to state a claim to relief that is plausible on its face[,]" and that the motion "ignored [Horsey's] Amended Complaint in its entirety[,] therefore not addressing the facts that [u]phold" a *Rattigan*-type claim. (*Id.* at 5.)

## II.   APPLICABLE LEGAL STANDARD

### A.   Motions To Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive such a motion, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Therefore, "[w]hile a complaint attacked by a Rule

10

12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Iqbal*, 556 U.S. at 678. This means that "the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 343 (D.C. Cir. 2018) (quoting *Twombly*, 550 U.S. at 555).

In evaluating whether a complaint sets forth sufficient factual allegations, a court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, granting plaintiff the benefit of all inferences that can reasonably be derived from the facts alleged." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (internal quotation marks, alterations, and citation omitted). Notably, however, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks, citation, and alterations omitted). When analyzing a motion to dismiss brought under Rule 12(b)(6), the court generally "does not consider matters beyond the pleadings"; however, "the court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013) (internal quotation marks, citations, and alterations omitted).

## B. Intentional Discrimination and Hostile Work Environment Claims Under Title VII

"There are two statutory elements for an employment discrimination action under Title VII: (1) the plaintiff suffered an adverse employment action (2) because of the employee's race, color, religion, sex, or national origin." *Horsey*, 170 F. Supp. 3d at 264 (internal quotation marks, citation, and alterations omitted). Thus, a plaintiff claiming discrimination must allege facts that, if true, would establish both of those elements. "An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Ng v. Lahood*, 952 F. Supp. 2d 85, 91 (D.D.C. 2013) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C.Cir.2011)). And for an adverse employment action to be taken "because of" the plaintiff's protected status, "discrimination must be a motivating factor in, but need not be the but-for cause of, [the] adverse employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 370 (2013); *see also* 42 U.S.C. § 2000e-2(m).

"To state a Title VII hostile work environment claim, a plaintiff must allege that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Horsey*, 170 F. Supp. 3d at 264 (internal quotation marks, citation, and alterations omitted). In determining whether a complaint states a plausible hostile work environment claim, the court considers "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*

(internal quotation marks and citation omitted).

## III. ANALYSIS

Horsey has filed an amended complaint that alleges, primarily, that the State Department revoked his security clearance after he refused to undergo a mental evaluation without his union representative present. (*See* Am. Compl. ¶¶ 52, 57.) The pleading suggests that racial discrimination motivated State's employment decisions, simply and solely because Horsey is African American and the Caucasian co-worker with whom he had an altercation was not required "to partake in a meeting with medical personnel as a part of the investigation into his false allegations against [Horsey][.]" (*Id.* ¶ 53.) But the amended complaint also plainly alleges that Horsey's own refusal to consent to the allegedly discriminatory mental evaluation was the reason that his security clearance was revoked and he was ultimately suspended. (*See id.* ¶¶ 52, 57; *see also* Pl.'s Surreply at 4.)

Thus, as explained fully below, even if the allegations in the amended complaint are taken as true, they establish that the cause of the critical adverse employment action (Horsey's suspension) was Horsey's own declination, not race discrimination. In addition, the complaint's bald assertion that Horsey "endured discrimination that was pervasive and regular[] (in the form of emails, phone calls, and letters[] threatening [his] employment)" (Am. Compl. ¶ 58)—without further description or discussion—is manifestly insufficient to support any reasonable inference that State subjected Horsey to a hostile work environment in violation of Title VII. Therefore, both Title VII counts in Horsey's amended complaint fail to state a claim as a matter of law and must be dismissed.

## A. Horsey's Amended Complaint Does Not Allege That Horsey Suffered An Actionable Adverse Employment Action "Because Of" His Race

Liberally construed and fairly read, Horsey's amended complaint alleges that he endured seven distinct workplace slights arising out of the conflict with his co-worker, each of which Horsey might have intended to present as an actionable adverse employment action in support of his intentional discrimination claim: (1) his co-worker's allegedly false report to supervisors about him (*see* Am. Compl. ¶ 6); (2) his supervisor's referral of the altercation incident for investigation (*see id.* ¶ 7); (3) the investigation itself (*see id.* ¶¶ 9–17, 24–25, 31); (4) State's request, and ultimately its requirement, that Horsey undergo a mental evaluation (*see id.* ¶¶ 8, 19, 26–28); (5) the denial of Horsey's request to have union representation present at the mental evaluation (*see id.* ¶¶ 29–31, 33, 41); (6) the subsequent suspension and revocation of Horsey's security clearance (*see id.* ¶¶ 34, 39); and (7) Horsey's being placed on administrative leave and eventually indefinitely suspended (*see id.* ¶¶ 34, 37).  Significantly for present purposes, the only one of these potential adverse actions that the amended complaint attributes to race discrimination is State's requirement that Horsey undergo a mental evaluation, and as it turns out, this circumstance is a fatal flaw with respect to Horsey's Title VII claim of intentional discrimination (Count I), for the reasons explained below.

### 1. A Mental Evaluation Requirement Is Not An Adverse Employment Action, And Even So, Horsey Has Not Exhausted Any Discrimination Claim Based On This Requirement

The amended complaint explicitly suggests that State's requirement that Horsey undergo a mental evaluation was racially discriminatory.  (*See id.* ¶ 53 ("[Horsey's co-worker] (white male) was not asked to partake in a meeting with medical personnel as

part of the investigation into his false allegations against [Horsey] (black male), and remains employed with Defendants.").) But State's requirement that Horsey undergo a mental evaluation does not appear to qualify as an adverse employment action for Title VII purposes. Such a requirement does not, in and of itself, impact or alter an employee's working conditions. *See Ng*, 952 F. Supp. 2d at 91. And the amended complaint does not allege that State's mandate that Horsey himself *undergo* an evaluation—as distinct from Horsey's *refusal* to undergo an evaluation—caused a significant change in Horsey's employment status. *See Spellman v. Ohio Dep't of Trans.*, 244 F. Supp. 3d 686, 702 (S.D. Ohio 2017) ("forced psychological evaluation" not an adverse employment action for purposes of Title VII discrimination claim); *Missick v. City of New York*, 707 F. Supp. 2d 336, 348 n.5 (E.D.N.Y. 2010) (same for medical evaluation); *Bazile v. City of New York*, 215 F. Supp. 2d 354, 386 (S.D.N.Y. 2002) (concluding that referral for psychological evaluation was not adverse employment action "[a]bsent any showing of a significant impact on [plaintiff's] working conditions—or, indeed, any impact"); *cf. Baum v. Rockland Cty.*, 161 Fed. App'x 62, 64 (2d Cir. 2005) (finding that the requirement to undergo a medical examination "did not constitute an adverse employment action" under the Americans with Disabilities Act and Age Discrimination in Employment Act).

Even if State's mental evaluation requirement, and/or State's refusal to authorize union representation during the evaluation, qualified as an adverse employment action for Title VII purposes, this Court's prior opinion concerning Horsey's initial complaint specifically held that Horsey had failed to exhaust his administrative remedies pertaining to this particular claim. *See Horsey*, 170 F. Supp. 3d at 267 ("[T]he Title VII

discrimination claims in Horsey's complaint that are based on the three alleged instances in which Horsey was referred to a medical/psychological evaluation and denied union representation at that evaluation must be dismissed for lack of administrative exhaustion.").  This finding rested on the Court's conclusion that Horsey's contacts with the Equal Employment Opportunity Commission regarding those circumstances were "well outside the 45-day window that the Title VII regulations prescribe."  *Id.* (citing 29 C.F.R. § 1614.105(a)(1)).  The Court also held that Horsey's representations in opposing State's motion to dismiss on these grounds were "manifestly insufficient to establish that [equitable] tolling is warranted[.]"  *Id.*

Horsey has not requested reconsideration of this Court's prior failure-to-exhaust determination, and the Court sees no reason to revisit that conclusion now.  Therefore, even if the amended complaint's allegation that State's mental evaluation requirement was discriminatory is true, it is not an *actionable* basis for proceeding with Horsey's intentional discrimination claim (either because that requirement is not an adverse employment action or because any claim premised on that requirement is unexhausted), and thus, to the extent that Count One of Horsey's amended complaint rests on the allegedly discriminatory mental evaluation requirement, that claim must be dismissed.

2. <u>None Of The Remaining Adverse Employment Actions Are Alleged To Have Taken Place Because Of Horsey's Race</u>

Each of the other potentially adverse actions that appears in Horsey's amended complaint is likewise insufficient to support Horsey's intentional discrimination claim, because none of them is alleged to have occurred "because of" Horsey's race, as Title VII requires.  *See* 42 U.S.C. § 2000e-2(a).  In other words, Horsey's amended complaint fails to raise a plausible inference that State was motivated by race, even in part, when

it made these other employment decisions. *See Univ. of Sw. Tex. Med. Ctr.*, 570 U.S. at 370.

With respect to the most obviously adverse of the employment actions that are described in the complaint—Horsey's suspension, the revocation of his security clearance, and his first being placed on administrative leave before being indefinitely suspended—Horsey's pleading plainly points to his refusal to undergo the mental evaluation as the cause of the alleged adverse action. For example, in laying out Horsey's discrimination claim, the amended complaint alleges that "[Horsey] was suspended from his position indefinitely when [Horsey's] security [c]learance was revoked *because he refused [to] participate* in an unlawful [evaluation] and meet with medical personnel without a representative present[.]" (Am. Compl. ¶ 52 (emphasis added).) And the complaint further acknowledges that Horsey received a letter from Diplomatic Security requiring that he undergo a "'mandatory evaluation'[] as part of the security clearance process[,]" and that the letter notified Horsey "that non-compliance with this directive could have negative consequences with regard to your security clearance eligibility." (*Id.* ¶¶ 28, 29.) Thus, the amended complaint's own allegations establish that State's decisions to suspend and later revoke Horsey's security clearance; to place him on administrative leave; and to indefinitely suspend him occurred not because of Horsey's race but because of his own recalcitrance with respect to the mental evaluation. *Cf. Townsend v. United States*, 236 F. Supp. 3d 280, 317 (D.D.C. 2017) (dismissing claim because "the plaintiff's own allegations . . . [are] impossible to

reconcile" with the plaintiff's claim).[6]

Horsey's intentional discrimination theory as articulated in the complaint also appears to rest on his contention that he was "suspended indefinitely when a knowingly false and discriminatory referral was made to security clearance authorities." (Am. Compl., at 1.) When this Court previously addressed the sufficiency of these allegations as they appeared in Horsey's initial complaint, the Court reasoned that there might be one potential path forward toward establishing the necessary causation, despite the many legal obstacles that the alleged facts presented: if Horsey amended the complaint to make a plausible allegation that the "*basis* for the wrongful revocation of Horsey's security clearance was a knowingly false and discriminatory report or referral" to security clearance authorities, as the D.C. Circuit authorized in the *Rattigan* line of cases. *Horsey*, 170 F. Supp. 3d at 270 (emphasis in original) (citing *Rattigan II*, 689 F.3d at 770). Horsey has included the "knowingly false and discriminatory" language in his amended complaint, and thus attempts to chart this course, but his allegations are otherwise insufficient in at least two significant respects: first, there are no allegations of fact that give rise to a reasonable inference that Horsey's referral to the security clearance authorities was *discriminatory*; and, second, the complaint does not even conceivably allege that the same individual was motivated both by falsity and

---

[6] To be clear, even if Horsey had alleged that State suspended and/or revoked his Security Clearance "because of" his race, under existing Supreme Court precedent, this Court would not be authorized to review such a decision. *See Horsey*, 170 F. Supp. 3d at 268 ("[A]n agency's decision to deny or revoke an employee's security clearance is precluded from judicial review[.]" (citing *Egan*, 484 U.S. at 529)); (*see also* n.2, *supra*.) Relatedly, it is not clear that this Court would be able to assess the legality of State's decisions to place Horsey on administrative leave and later suspend him, given the intervening suspension and revocation of his Security Clearance. *See Njang*, 187 F. Supp. 3d at 186–89. Thus, what is really at issue is State's motivation for placing Horsey on leave and ultimately suspending him, and there is no allegation in the amended complaint that the agency undertook those actions because of Horsey's race.

discrimination, as the D.C. Circuit requires. *See id.* (citing *Rattigan III*, 780 F.3d at 416).

With respect to the first deficiency, the amended complaint contains no allegations that the referral to security clearance authorities was racially discriminatory; instead, in laying out the factual allegations, the amended complaint emphasizes that "[Horsey's] Top Secret Security Clearance was suspended" (Am. Compl. ¶ 34) only after State repeatedly demanded that Horsey undergo a mental evaluation (*see id.* ¶¶ 27–29, 31) and Horsey repeatedly refused to do so without a union representative present (*see id.* ¶¶ 29–30, 33). And while the amended complaint alleges that Wardle (Horsey's co-worker) made a false report to his supervisors about Horsey, the pleading contains no allegations that Wardle was motivated by Horsey's race (*see id.* ¶¶ 6–7); or that their supervisor's decision to refer the incident to Diplomatic Security for investigation was racially discriminatory (*see id.* ¶¶ 7–8); or that Diplomatic Security conducted its investigation because of racial animus or in a manner that was racially discriminatory (with the exception of the referral for mental evaluation (*see* Sec. III.A.i, *supra*)) (*see* Am. Compl. ¶¶ 9–17, 24–25, 31).

For similar reasons, Horsey's amended complaint further fails to allege sufficient facts to support a reasonable inference that any discriminatory motive and knowing falsity united in one person. *See Horsey*, 170 F. Supp. 3d at 270; *see also Rattigan III*, 780 F.3d at 416. Instead, Horsey alleges in his amended complaint only that his co-worker knowingly made a *false* report (*see id.* ¶ 6); that Horsey's supervisor *should have known* that "this individual was filing another false claim" (*id.* ¶ 8); and that the Diplomatic Security agent conducting the investigation "was aware of [Horsey's co-

worker's] history of filing false claims" (*id.* ¶ 23), but the complaint does not allege

that either Horsey's supervisor or the Diplomatic Security investigators actually *knew*

that the report made against him was false, nor does it assert that any of these actors

*also* had a discriminatory motive.  Therefore, these alleged facts cannot give rise to a

plausible inference of intentional discrimination as the cause of any actionable adverse

action, either directly or on *Rattigan* grounds.  *See Horsey*, 170 F. Supp. 269

(acknowledging that, under *Rattigan*, a plaintiff who can show "'that agency employees

acted with a . . . discriminatory motive in reporting or referring information [to security

clearance authorities] that they knew to be false'" can proceed with respect to an

eventual post-clearance adverse employment determination (quoting *Rattigan II*, 689

F.3d at 771)).

In sum, Horsey's amended complaint fails to allege that the State Department

took any actionable adverse employment action against Horsey *because of* his race.

Therefore, the complaint fails to raise a plausible Title VII discrimination claim and

Horsey's first count must be dismissed.

### B.     Horsey's Amended Complaint Does Not Allege Sufficient Facts To Support A Hostile Work Environment Claim

"Not everything that makes an employee unhappy is an actionable adverse

action."  *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quotation

marks, citation, and alteration omitted).  Indeed, as this Court previously observed, a

plaintiff who attempts to plead a hostile work environment claim faces the "high

hurdle" of plausibly "alleg[ing] that his employer subjected him to discriminatory

intimidation, ridicule, and insult[,]" and "the alleged abuse must be sufficiently severe

or pervasive to alter the conditions of his employment and create an abusive working

environment." *Horsey*, 170 F. Supp. 3d at 265–66 (internal quotation marks, citations, and alterations omitted). In its prior opinion, this Court held that Horsey's initial complaint failed to meet these stringent requirements, because it "contain[ed] no clear statement regarding the particular facts and circumstances that support Horsey's bald contention that he was subjected to a hostile work environment." *Id.* at 266 (citation omitted). And while Horsey has amended his complaint to include additional allegations of fact, the Court must again conclude that, even when the amended pro se pleading is liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it still fails to plead sufficient facts to give rise to a plausible hostile work environment claim.

Horsey's amended complaint alleges that State (1) "ignored [Horsey's] rights under *Weingarten*, and those guaranteed on the form DS-7619" (Am. Compl. ¶ 57; *see also id.* ¶¶ 17, 18; Ex. 4 to Am. Compl., ECF No. 22-1, at 11);[7] (2) "required [Horsey] to undergo an evaluation" but not "his white counterpart" (Am. Compl. ¶ 57); and (3) subjected Horsey to "emails, phone calls, and letters, threatening [Horsey's] employment" (*id.* ¶ 58). These allegations do not support a plausible hostile work environment claim for at least three reasons.

First, on their face, these allegations are patently insufficient to establish a hostile work environment, even if they are taken as true. For example, the complaint does not illuminate *how* State "required" Horsey to undergo a mental evaluation, much less that it did so in a "severe or pervasive" manner, nor does Horsey's pleading

---

[7] "'*Weingarten* rights' refers to the Supreme Court's decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), in which the Court upheld the National Labor Relations Board's determination that, under section 7 of the National Labor Relations Act, 29 U.S.C. § 157, an employee represented by a union is entitled to union representation during an interview that the employee reasonably believes will result in discipline." *Horsey*, 170 F. Supp. 3d at 270–71 n.5 (citing *Weingarten*, 420 U.S. at 251).

describe the volume, nature, or content of the alleged "emails, phone calls, and letters" that Horsey allegedly received.  (*Id.* ¶ 57.)  To be sure, this Court is required to draw all reasonable inferences in Horsey's favor, *see Sickle*, 884 F.3d at 345, but it may not speculate as to what the allegedly threatening communications conveyed, or their number, or their frequency, *see, e.g.*, *Case New Holland, Inc. v. EEOC*, No. 13-cv-1176, 2014 WL 6679884, at *2 (D.D.C. Oct. 17, 2014) (refusing to speculate "as to whether the emails had any particular impact on the plaintiffs' business operations" where "[t]he pleadings do not offer concrete assertions of fact that any harm actually occurred"); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  And given what *is* stated in Horsey's amended complaint, the mere fact that Horsey's employer apparently premised his continued employment on his undergoing a mental evaluation after an altercation he had with a co-worker, and used various forms of communication to covey to him that his job was on the line, is simply not enough of a factual basis to support any reasonable inference that State created a working environment that was so abusive that it violated Title VII. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("[A] few isolated incidents of offensive conduct do not amount to actionable harassment."); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").

Second, even if the Court assumed or inferred that State harshly threatened Horsey's employment every single day for months on end, to qualify as a hostile work environment, "the behavior complained of must be 'so objectively offensive as to alter

the conditions of the victim's employment.'" *Townsend v. United States*, 236 F. Supp. 3d at 312–13 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Horsey's amended complaint contains *no* allegations to that effect; indeed, the pleading is entirely devoid of any allegations whatsoever regarding the impact of State's allegedly hostile behavior on Horsey's ability to perform his job or any other aspect of his employment. Nowhere does the amended complaint claim that State's demands regarding the evaluation, or any threats to Horsey's employment, themselves caused a change in the terms or conditions of Horsey's employment, which means that however pervasive any such demands may have been, the amended complaint fails to establish that such conduct caused or created an actionable hostile work environment. *See, e.g.*, *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 190 (D.D.C. 2012) ("[E]ven rude office conduct that generates stressful working conditions does not create liability for discrimination under Title VII, unless that conduct is 'permeated with discriminatory intimidation, ridicule, and insult.'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))).

Finally, because Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[,]" 42 U.S.C. § 2000e-2(a)(1), it is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination[,]" *Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)); *see also id.* (explaining that for a hostile work environment claim to succeed, the plaintiff must allege "that she was discriminated against because of her

status") (internal quotation marks, citation, and alteration omitted)). As noted in Section III.A.2, *supra*, with the exception of Horsey's allegation that State required him, an African-American employee, to undergo a mental evaluation, when it did not require the same of his Caucasian co-worker, Horsey's amended complaint is entirely devoid of allegations that State subjected him to harassment or abuse *because of his race. See Jones v. Billington*, 12 F. Supp. 2d 1, 12 (D.D.C. 1997) (finding that a hostile work environment claim failed where "the Plaintiff has not demonstrated that any of the conduct of which he complains was related to his race, or that his workplace was permeated with racially discriminatory behavior"). And it is well established that one allegedly racially discriminatory act—here, State's requirement that Horsey undergo a mental evaluation when it did not demand the same of his white co-worker—is not, on its own, enough to support a hostile work environment claim. *See Stewart*, 275 F.3d at 1134 ("Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment.").

## IV.  CONCLUSION

For the reasons explained above, when this Court looks at the totality of the circumstances as alleged in the complaint, as it must, *see Horsey*, 170 F. Supp. 3d at 264, it is clear that, despite having been provided with the opportunity to add sufficient allegations, Horsey has once again failed to overcome the "high hurdle" of pleading an actionable Title VII hostile work environment claim, *id.* at 265, nor has he pled sufficient facts to support his claim that State took adverse actions against him because of his race. Consequently, and as set forth in the accompanying Order, State's motion

to dismiss Horsey's amended complaint will be **GRANTED**, and Horsey's action will be **DISMISSED**.


DATE: July 18, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge